# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON

**KAREN A. OVERSTREET**
Bankruptcy Judge

United States Courthouse
700 Stewart St., Rm. 7216
Seattle, WA 98101-1271
Phone: 206-370-5330
Fax: 206-370-5335
**www.wawb.uscourts.gov**

May 8, 2015

**Via CM/ECF**

Ms. Denice Moewes
303 N. 67th Street
Seattle, WA, 98103

Ms. Lee Grochmal
Grochmal & Fryer, P.C.
114 W. Magnolia, Suite 315
Bellingham, WA 98225

    Re: *Burdette v. Rachel;* Adversary No. 14-01408

## COURT'S LETTER RULING

Dear Counsel:

This matter came before the Court for trial on April 23, 2015. Ms. Moewes appeared on behalf of her client, Virginia Burdette ("Plaintiff"), who is the Chapter 7 trustee in the underlying bankruptcy. Ms. Grochmal appeared on behalf of her client, Dawn Rachel, the debtor and defendant herein ("Defendant"). This is an action by the Plaintiff to deny the Defendant's discharge under 11 U.S.C. §§ 727(a)(2), 727(a)(3), and 727(a)(4).

The Court has jurisdiction of this matter and it is a core proceeding. Judge Brandt heard the Plaintiff's motion for summary judgment under Section 727(a)(4) on March 25, 2015, and granted partial summary judgment on the elements of false oaths and materiality. Therefore, at trial, the only remaining issues under Section 727(a)(4) were whether the false oaths were made knowingly and with fraudulent intent. For the following reasons, which constitute the Court's findings of fact and conclusions of law for purposes of Bankruptcy Rule 7052, the Court finds in favor of the Plaintiff under both Sections 727(a)(2) and (a)(4).

## FACTS

David Ray Rachel, the Defendant's father, passed away on August 16, 2013. Ex. P-6. Soon after the death of her father, the Defendant learned that she and her two sisters would receive a death benefit from their late father's life insurance policy. On October 7, 2013,

1

Hartford Life and Annuity ("Hartford"), the life insurance policy carrier, sent the Defendant a letter stating that her portion of the death benefit would be $33,616.17, and that a check would soon be sent to her. Ex. P-7, p.1. Hartford issued the Defendant a check in that amount on the same day. *Id*. at 2. The Defendant did not cash or deposit the check upon receipt.

At trial, the Defendant testified that she had experienced financial issues for a number of years, notably with the Internal Revenue Service ("IRS") for overdue taxes from 2006 and 2007. She testified that the IRS had begun levying her bank account in 2008, and had again done so on December 10, 2013. The Defendant's schedules show that at the time of her bankruptcy filing she owed $10,322.08 in priority debt to the IRS and $29,592.41 in general unsecured debt. Ex. P-1. The Defendant also testified that in 2009, LVNV Funding LLC had a judgment against her and had initiated collection activities. The Defendant contemplated bankruptcy and paid the firm of Lester & Hydahl $1,556 on September 24, 2013, to begin work on her case. Ex. P-4. However, the Defendant did not immediately file her bankruptcy case.

On January 4, 2014, the Defendant indorsed the check from Hartford with her signature, and directed that it be paid "to the order of Kelsey Rachel Wilmore." Kelsey Rachel Wilmore is the adult daughter of the Defendant. The Defendant testified that she instructed her daughter to open a new bank account in her daughter's name at Industrial Credit Union, with whom the defendant did not have an account, and deposit the check into the new account. The bank records show that the account was opened on January 3, 2014, and that the check was deposited the same day. Ex. P-9, P-11. However, the Defendant testified that she did not intend to give her daughter the proceeds of the check and that the Defendant maintained control of the account by using the only debit card attached to the account. The Defendant testified that she feared the IRS would levy the money if the check were in her own bank account and that she used the account set up only in her daughter's name to avoid the IRS's collection efforts.

The Defendant testified that she spent $8,100.00 of the proceeds she received from Hartford to buy a 2005 Subaru. The Defendant also wrote checks, signed by her daughter, in the amounts of $2,754.00 to her son, Charlie O'Neil; $538.63 to Appliance Depot; $1,839.00 to Susan Porter; $440.00 to Darienne Box; $1,749.73 to Mt. Baker Moto-Sports; and $2,090.00 to herself. Ex. P-19. She then used the check made payable to herself to make a partial payment in the same amount to the IRS. The Defendant testified that she used much of the remaining money from Hartford to pay for rent and living expenses, dental work, and other incidentals, and had only $4,000.00 remaining from the death benefit at the time of filing.

The Defendant filed her Chapter 7 bankruptcy on April 14, 2014. Ex. P-1. Neither her schedules nor her statement of financial affairs listed the receipt of the death benefit or the transfer of the check from Hartford to her daughter. *Id.* In response to Question 20 on Schedule B, which requires debtors to list interests in estates of decedents, death benefit plans, life insurance policies, or trusts, the Defendant indicated "none." *Id.* The Defendant listed $4,000 as cash on hand, which she testified at trial was the remaining amount of the death benefit; however she did not disclose that part of those funds may have been in her daughter's bank account as of the petition date. *Id., see also* Ex. P-14, showing an account balance of $1,210.07 on the date of

filing.[1]  In response to Questions 1 and 2 on the statement of financial affairs, the Defendant listed income of $18,179 from Bakerview Nursery and Oregon Fisheries in 2013 and $4,951 in income from Bakerview Nursery in 2012, but disclosed no additional income. Ex. P-1.

The Defendant's First Meeting of Creditors ("341 Meeting") was held on May 19, 2014. The Plaintiff questioned the Defendant at the 341 Meeting about the Defendant's purchase of the Subaru, and at that time the Defendant revealed that she had received a death benefit of $33,616.17 from her late father's life insurance policy. Ex. P-3, pp. 5-7.  The Defendant stated at the Section 341 Meeting that she had indorsed the death benefit check to "a friend" to hold for her in a bank account. *Id.* at 8.  The Defendant further explained that she was accessing the funds through a debit card given to her by the friend. *Id.*  The Defendant testified at trial that she didn't want to tell the trustee at her 341 Meeting that she had indorsed the check to her daughter because she didn't want to get her daughter in any trouble.

The Plaintiff filed this Adversary Proceeding on October 20, 2014 objecting to the Defendant's discharge under 11 U.S.C. Sections 727(a)(2), (a)(3), and (a)(4).

## CONCLUSIONS OF LAW

### A.    Burden of Proof

The Plaintiff bears the burden of proving by a preponderance of the evidence the elements of the nondischarge provisions at issue, Sections 727(a)(2), (a)(3), and (a)(4). Discharge provisions are construed liberally in favor of the debtor and strictly against the creditor objecting to discharge.  That being said, discharge is reserved for the honest but unfortunate debtor.

### B.    Section 727(a)(2)

The Plaintiff's first cause of action is under 11 U.S.C. Section 727(a)(2)(A).  Section 727(a)(2)(A) allows the court to deny the discharge of  a debtor who transfers, removes, destroys, mutilates, or conceals property of the debtor within a year before the petition date, and who does so with intent to hinder, delay, or defraud a creditor.  To deny discharge, the court must find actual intent to hinder, delay or defraud, but this intent may be established by circumstantial evidence or by inferences drawn from the debtor's course of conduct.   *In re Adeeb,* 787 F.2d 1339, 1342-43 (9th Cir. 1986); *Wills v. Wills (In re Wills)*, 243 B.R. 58, 65 (9th Cir. BAP 1999).  The Plaintiff has the burden of proving actual intent by a preponderance of the evidence.  However, when the debtor admits acting with such intent, the court need not rely on circumstantial evidence. *In re Adeeb,* 787 F.2d at 1343.

In this case, the property at issue is the death benefit, which the Defendant testified remained her property, despite indorsement of the check to her daughter.  By indorsing the check to her daughter and directing her daughter to deposit the check into a new account in the

---

[1] It was unclear from trial testimony whether the $4,000.00 disclosed on schedule B included the $1,210.07 remaining in the bank account.  If the $4,000.00 did not include this amount, then the remaining funds in the bank account were also undisclosed in the Defendant's schedules.

daughter's name, the Defendant concealed the receipt of these funds from the IRS, which had levied the bank account in the Defendant's own name. Moreover, by failing to report the death benefit as an asset or income in the schedules and the statement of financial affairs, the Defendant further concealed the receipt of the death benefit from other creditors and the Plaintiff. Additionally, the Defendant dated the indorsement of the check to her daughter as January 4, 2014, and the bank records show that the check was deposited on January 3, 2014, only four months before the petition date and well within the one year period under Section 727(a)(2)(A). Finally, the Defendant testified at trial that the purpose of her actions involving the death benefit check was to prevent the IRS from levying the check entirely so that she could use the money for her expenses. The Defendant's testimony at trial was a clear admission that she intended to hinder and delay the IRS's collection efforts. Therefore, the Plaintiff has met her burden under Section 727(a)(2).

## C.     Section 727(a)(4)

The Plaintiff's complaint raised a second cause of action under 11 U.S.C. § 727(a)(4), which provides for denial of discharge when a debtor knowingly and fraudulently makes a material false oath in or in connection with the bankruptcy proceeding. In *In re Retz*, the Ninth Circuit Court of Appeals articulated a four-part test that must be met before discharge can be denied under Section 727(a)(4). 606 F.3d 1189 (9th Cir. 2010). This test requires that the Plaintiff prove, by a preponderance of the evidence, that: (1) the debtor made a false oath in or in connection with the case; (2) that the false oath related to a material fact; (3) that the oath  was made knowingly; and (4) that the oath was made with fraudulent intent. *Id.* at 1198-99. Under *Khalil v. Developers Surety and Indemnity Company (In re Khalil)*, errors or omissions in the schedules or statement of financial affairs can qualify as false oaths. 379 B.R. 163, 172 (9th Cir. BAP 2007).

The Plaintiff moved for summary judgment on this cause of action, and the motion was heard by Judge Brandt on March 25, 2015. Judge Brandt granted summary judgment as to the first two elements of the test, the false oath and materiality elements, and denied summary judgment as to the last two elements, the knowledge and fraudulent intent elements. To clarify Judge Brant's ruling at summary judgment, the Court concludes that the omission of the death benefit from Question 2 of the statement of financial affairs, and the failure to disclose that part of the death benefit was located in the daughter's bank account on Schedule B were material false oaths. Therefore, the only issues left to be decided at trial were whether the Defendant made the omissions knowingly and with fraudulent intent.

The court in *In re Khalil* stated that "[a] debtor 'acts knowingly if he or she acts deliberately and consciously.'" 379 B.R. at 173 (*quoting In re Roberts¸* 331 B.R. 876, 883 (9th Cir. BAP 2005). Under *In re Retz*, a debtor's conscious and deliberate signing of schedules and the statement of financial affairs when the debtor knows the documents are incomplete is sufficient to meet this third element. 606 F.3d at 1199. The Defendant here testified that she signed the schedules and the statement of financial affairs, and her testimony indicated that she was aware of the omissions in Schedule B and the statement of financial affairs at the time she signed the documents. Therefore, the third element of Section 727(a)(4) is satisfied.

4

The final element the Plaintiff must prove is fraudulent intent. This element is met when the plaintiff shows that the Defendant made representations knowing the representations were false at the time, with the intent and purpose of deceiving creditors. *In re Khalil*, 379 B.R. at 173 (*quoting In re Roberts*, 331 B.R. at 884). The Plaintiff may prove intent with circumstantial evidence or by inferences drawn from the debtor's conduct. *In re Retz*, 606 F.3d at 1199, (*citing Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 753-54 (9th Cir.1985)). Circumstantial evidence of intent may include reckless indifference or disregard for the truth, but these are insufficient alone to constitute fraudulent intent. *In re Khalil*, 379 B.R. at 173-75.

In this case, the Court concludes that the Defendant had such fraudulent intent. The Defendant's schedules and statement of financial affairs exhibited a pattern of misrepresentations and omissions that operated together to hide the fact that the Defendant had received the death benefit. Moreover, the Defendant repeatedly testified that her intent in the way she handled the death benefit was to prevent the IRS and other creditors from reaching the death benefit for satisfaction of her debts, and the Court concludes that the pattern of misrepresentations and omissions in the schedules and the statement of financial affairs was in furtherance of this intent. The Defendant's schedules and statement of financial affairs were designed to obscure any reference to the death benefit, and therefore the final element of the Section 727(a)(4) test is met.

## D. The Advice of Counsel Defense

The Defendant previously raised the advice of counsel defense to rebut the Plaintiff's assertion of fraudulent intent. "Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." *In re Adeeb*, 787 F.2d at 1343. "However, the debtor's reliance must be in good faith." *Id.* The defense is not available to a debtor when the erroneous information should have been evident to the debtor. *In re Retz*, 606 F. 3d at 1199, *citing Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir.1987). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Id.*

Although the Defendant raised the advice of counsel defense in her response to the Plaintiff's motion for summary judgment, she did not present evidence or testimony to support the defense at trial. Instead, she refused to waive the attorney client privilege and did not testify about any advice given to her by her attorney. Counsel for the Defendant argued that the Defendant was merely converting nonexempt assets (the death benefit proceeds) into exempt assets (*e.g.,* the Subaru) and paying her ordinary and necessary living expenses. Indeed, that is a perfectly permissible goal under bankruptcy law. However, in this case the Defendant engaged in actions that were specifically designed to conceal the funds from her creditors long enough to permit her to use the proceeds without their knowledge. The Defendant did not testify that her attorney advised her to have her daughter open a separate bank account so that the funds could be utilized by the Defendant without attracting the attention of her creditors. Based upon the evidence at trial, the Court therefore concludes that the defense of advice of counsel is not available to the Defendant.

**E.      Section 727(a)(3)**

Given the Court's ruling on the Plaintiff's causes of action under Sections 727(a)(2)(A) and 727(a)(4), the Court need not rule on the Plaintiff's third cause of action under Section 727(a)(3).

The Court concludes that the Defendant's discharge should be denied under Sections 727(a)(2)(A) and (a)(4). Plaintiff's counsel is instructed to prepare an order and judgment consistent with this ruling and note them for presentation on one of the Court's regular motion calendars.

Very truly yours,

Karen A. Overstreet
United States Bankruptcy Judge